## NEEDHAM BRANCH vs. THE STATE.

### COURT OF APPEALS, TYLER TERM, 1883.

*Murder—Proof of Character of Deceased.* The rule laid down in Horbach's case, 43 Tex. 242, defining the circumstances under which proof of the general character of the deceased may be put in evidence by a defendant upon trial for murder, cannot be restricted to the one act of seemingly attempting to draw a pistol or other weapon. The reason of the rule applies with equal force to any act reasonably indicating a present purpose on the part of the person slain to kill or do serious bodily injury to the slayer. See the opinion in this case for evidence *held*, admissible under this rule.

*Self-Defense—Charge of the Court.* Note in the opinion a charge of the court upon the subject of self defense, *held error*; and also a requested charge upon the same subject presenting the converse of the principle as it was charged by the court, which requested charge was erroneously refused. Note also error in the refusal of a special charge upon the subject of the right of one to interfere and prevent, by killing him, the deceased from killing another.

Appeal from Shelby County.

*Johnson, and Wheeler & Wheeler, Stephenson and Field* for appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

Opinion by Willson, J.

There was no error in overruling defendant's motion in arrest of judgment, the indictment being in all essentials sufficient.

Defendant Branch shot and killed Bill Stewart, shooting once with a pistol. It was dark or about dark when the homicide occurred. John Sample, Alex. Monroe, Pad. Lout, Clabe Lout and the defendant were in a wagon together travelling from the town of Centre, in Shelby county to their houses. Deceased and Walker Sample who were traveling on horseback rode up behind the wagon. Deceased was armed with a double-barreled shot gun and was drunk. De-

ceased called out to Clabe Lout, who was driving the team to the wagon, to stop. Walker Sample, who was with the deceased, told Clabe Lout to drive on, that deceased was drunk and could do nothing with him. Deceased then said : "Hold on, Clabe, or I will shoot into the wagon and kill the last one of you," and attempted to shoot but was prevented by Walker Sample. The wagon stopped, and deceased rode up to it, and said, talking to John Sample : "I have been run over in this county ever since I have been in it, and if there is any one in the wagon that has got anything against me, J. P. Stewart, belch it !" When deceased said this he attempted to shoot John Sample with the gun, and also to strike him with it, and was prevented by Walker Sample who got the gun away from him, and going off a few steps, discharged the gun. When Walker Sample took the gun from deceased, defendant said to deceased : "I am some horse myself. If you want to fight, fight a man and not a cripple." John Sample was a cripple. Defendant then got out of the wagon and walked to the rear of it, and deceased dismounted from his horse and advanced towards the defendant, and when he had reached within a few feet of him, defendant shot and killed him. Defendant shot almost instantly after Walker Sample had discharged deceased's gun. Defendant and John Sample were cousins and were raised up together from boyhood. When deceased pointed the gun at John Sample, and when Walker Sample got it away from him, it was cocked. It was proved that deceased, when drunk, was a man of violent and dangerous disposition.

Defendant proposed to prove further that the general reputation of the deceased was that he habitually carried a pistol. This proposed testimony was objected to by the state, and the objection sustained, because "it was not shown by the evidence that the deceased had any arms on his person, nor that he made any gesture as if to draw a weapon, or did any act which the habit of carrying pistols would serve to explain." In rejecting this proposed evidence the learned judge based his rulings upon the doctrine announced in Horbach's case 43 Tex. 242, in which case the evidence showed that at the time Horbach fired the fatal shot, the deceased was making a movement with his hand as if to draw a pistol. It was there held that evidence of the general character of the deceased, that he was a violent and dangerous man, and in the habit of carrying a pistol, was admissible to explain the movement of his hand. In the case before us, the ev-

idence shows no act on the part of of the deceased indicating that he was armed with a pistol and was attempting to use it. But, it is shown that at the time he was shot he was angry at the defendant, and was advanding upon him in a threatning manner, and that it was dark or nearly so, and that he had dismounted from his horse for the purpose of engaging in a fight with defendant. Would the fact that the deceased was in the habit of carrying a pistol serve in any degree to explain favorably to the defendant, the conduct of the deceased ? If such was generally known to be his habit, the presumption is that the defendant was aware of it, would it be likely to influence his action in repelling the attack which was then being made upon him by the deceased ? It is reasonable to conclude that it would, although the deceased may have made no demonstration indicating a purpose to draw a pistol. We do not think that the rule laid down in the Horbach case, is to be restricted to the one act of seemingly attempting to draw a pistol or other weapon. It seems to us that the reason of that rule applies with equal force to any act reasonably indicating a present purpose on the part of the person slain to kill or to do serious bodily injury to the slayer. In the case before us we think the proposed evidence should have been admitted.

There is no bill of exceptions in the record presenting the question as to the correctness of the court in admitting in evidence the declarations of John Sample made after the homicide had occurred. That question therefore is not before us in such manner as we can determine it. We will remark however that such declarations, could be admitted for one purpose only, if at all, and that purpose would be to impeach the witness John Sample, and if admitted for this purpose, the jury should be instructed by the court that they were not at liberty to consider them for any other purpose.

Several objections are urged by defendant's counsel to the charge of the court, and it is also contended that the court erred in refusing special charges requested by defendant. Without discussing in detail each of the assignments of error relating to the charge of the court, and the refusal of charges asked, we will notice such only, as in our opinion are well taken.

One paragraph of the charge given to the jury is as follows :
"When therefore an unlawful act is clearly shown to have been done and it does not appear from the testimony offered by the state, that it was done under circumstances which mitigate, excuse or justify it,

it is for the defendant to show facts which excuse or justify it, so that a reasonable doubt at least may arise on the evidence as to his guilt."

Similar charges to this have several times been before this court in similar cases, and we consider it now well settled by the decisions of this court, that they are objectionable, and constitute in most instances, material error.

Ake vs. State, 6 Ct. App. 398; Dubose vs. State, 10 Id. 230; Jones vs. State, 13 Id. 1.

In the case before us, we think it was error to give the charge above quoted, and this charge having been excepted to at the time it was given to the jury, it is not necessary to inquire further, as to whether or not it was calculated to injure the rights of the defendant.

Defendant requested the following charge to be given to the jury; which was refused, viz : "If it reasonably appeared by the acts or by words coupled with the acts of the deceased, that it was the purpose or intent of the deceased to take the life of the defendant, or do him some serious bodily harm, the defendant was not bound to resort to all other means to prevent the injury, except to retreat, but on the contrary, the defendant had the right to slay him instantly without such resort."

In the charge given the jury, they were instructed that the defendant must have resorted to all other meanus, save that of retreat, and that unless he did so, he could not avail himself of the plea of self-defense. The charge of the court as given to the jury, and the charge asked by the defendant, and refused, are in direct conflict with each other, upon the question as to whether or not, when a person is assaulted under such circumstances as make it reasonably appear to him, that the purpose of the assailant is to kill or do him serious bodily injury, he must resort to all other means save retreat, to avoid the threatened injury, before he will be justified in slaying the assailant.

It is unnecessary that we should enter upon a discussion of the question thus presented. It has heretofore been fully considered and plainly determined, and it may be regarded as now settled law, that when a person is attacked under such circumstances as reasonably indicate a purpose and intent on the part of the attacking party to murder or maim him, or do him serious injury, the person who interferes for him, is not compelled to resort to other means for the

prevention of the injury, but may slay upon the spot, being responsible for any mistake if the right of resistance or interference is exercised under circumstances not sanctioned by law. Kendall vs. State, 8 Ct. App. 569; Ainsworth vs. State, Id. 522; Foster vs. State, 11 Id. 105. We think the court erred in its charge, and erred in refusing the special charge requested by the defendant.

In one other respect we think the charge is deficient. It very properly instructed the jury that if the defendant provoked the attack of the deceased, or entered willingly into a fight with the deceased, he could not avail himself of perfect self-defense. In this connection, under the evidence in this case, we think the court should have further instructed the jury, that if they believed from the evidence that the deceased was making, or about to make an attack upon John Sample with the purpose and intent to kill Sample or to do him serious bodily injury, or that if from the conduct of the deceased, it so reasonably appeared to defendant that such attack was then about to be made, he, the defendant, would have the same right to prevent the injury threatened that Sample would have to prevent it. If it was the purpose of the defendant in interfering in the difficulty then pending between the deceased and John Sample, to prevent deceased from killing or seriously injuring Sample, then such interference on his part could not be regarded as provoking the attack of deceased, or as a willing entry into a fight with him. A special charge, calling the attention of the court to this phase of the case was requested by defendant and refused by the court. We think the evidence demanded a charge from the court elucidating this particular feature of the issue of self-defense.

Because of the several errors we have noticed, the judgment is reversed and the cause remanded.